UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

*FILED*

MAR **2 7** 2020

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____

DEPUTY

| | | |
|---|---|---|
| RYAN DENTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| CITY OF EL PASO, TEXAS, | § | **EP20CV0085** |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT AND INITIAL PLEADINGS

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RYAN DENTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| CITY OF EL PASO, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## **VERIFIED COMPLAINT**

Plaintiff Ryan Denton, by counsel, comes now and avers the following:

### **INTRODUCTION**

1.    This is a civil rights action brought by Plaintiff Ryan Denton (Denton) challenging Defendant City of El Paso, Texas (El Paso) policy and practice of barring religious proselytizing on public streets, sidewalks and ways in Union Plaza Area during city-sponsored art and farmers market that is free and open to the general public.

2.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Denton seeks injunctive relief, declaratory relief, and nominal damages against El Paso.

3.    El Paso's policy and practice have deprived Denton and continue to deprive him of his fundamental rights to free speech, due process, and free exercise of religion protected by the United States Constitution.

COMPLAINT, page 1

4.      Each and every act of El Paso alleged herein was committed by it under the color of state law and authority.

## JURISDICTION AND VENUE

5.      This action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6.      Under 28 U.S.C. §§ 1331 and 1343, this Court has jurisdiction over Denton's claims for injunctive relief and nominal damages. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction over Denton's request for declaratory relief. And, in accordance with 42 U.S.C. § 1988, this Court has jurisdiction over Denton's claims for costs and attorney fees.

7.      By virtue of 28 U.S.C. § 1391(b), the Western District of Texas is the proper venue, because all claims arise out of this district and all parties, including named defendant, reside in this district.

## PLAINTIFF

8.      Denton is a resident of El Paso, Texas.

## DEFENDANT

9.      El Paso is a municipal governmental authority located in the State of Texas. El Paso controls and is responsible for the regulation of public streets and ways in the city. El Paso also authorizes and oversees various departments, including its Museums and Cultural Affairs Department (MCAD).

COMPLAINT, page 2

## STATEMENT OF FACTS

### Denton's Religious Beliefs and Expression

10.     Denton is an evangelical Christian who firmly believes all have sinned and deserve damnation but can be saved through repentance and trusting in Jesus Christ.

11.     His Christian faith and concern for others compels him to proselytize and share the Gospel (good news of Jesus Christ) with others.

12.     Denton looks for opportunities to impart his sincere religious beliefs in public places and at public events.

13.     To share his message, Denton hands out written literature (Gospel tracts) and engages others in friendly discussions about his faith. He also likes to publicly proclaim (preach) his beliefs.

14.     Denton views literature distribution an essential method for his message because he can share the Gospel in detail with individuals who walk by and do not have the time or inclination to stop and visit with him.

15.     Conversation is also crucial for Denton's evangelistic efforts. This means affords him an opportunity to field questions about his faith and participate in give-and-take exchanges, allowing for further explanation of his beliefs.

16.     Additionally, Denton considers preaching an important means of communication because it gives a him a chance to convey his viewpoints with people in close proximity to him. No one need stop to hear his message. Also, preaching can draw people in, giving him an opportunity to hand out literature and/or have a discussion with someone about his religious beliefs.

COMPLAINT, page 3

17.     While sharing his beliefs in public, Denton does not cause congestion.  He places himself in open locations out of the way of pedestrian traffic so people can freely pass by him.

18.     Denton is neither loud nor disruptive.

19.     He does not solicit money or membership to organizations.

20.     Denton does not force anyone to listen to him or accept his literature.

21.     Denton desires to proselytize and share his religious beliefs on public streets, sidewalks and ways in downtown El Paso while the downtown art and farmers market is taking place in that area.

### El Paso's Downtown Artist and Farmers Market in Union Plaza Area

22.     The El Paso Downtown Artist and Farmers Market (Market) is a weekly outdoor artisan market featuring local arts, crafts, food and entertainment.

23.     Established in 2011, the Market occurs every Saturday in the Union Plaza Area in downtown El Paso, starting at either 9:00 a.m. or 10:00 a.m. and ending at 1:00 p.m.

24.     The Market is free and open to the public.  No cost or ticket is required for entry into the Market.

25.     Section 2.40.100 of the El Paso Municipal Code authorizes MCAD to use the Union Plaza Area to conduct the Market.

26.     The Union Plaza Area is located downtown, bounded by San Francisco Avenue to the north, Durango Street to the east, San Antonio Avenue to the south, and Anthony Street and Union Plaza Park to the west.

27.     The streets and a park where the Market takes place are public and open to the general public during the event.

COMPLAINT, page 4

28.     Portions of these streets are closed for vehicular traffic, but all streets and the park remain open for pedestrian traffic at all times.  There are no barriers hindering pedestrian access.

29.     The businesses in the Union Plaza Area remain open during the Market and patrons of these businesses come and go as they please.

30.     Section 2.40.100 of the El Paso Municipal Code empowers the city manager or designee to institute policies and procedures for the Market and for MCAD to manage the Market.

31.     MCAD reviews and approves vendors for the Market. To acquire a booth, a vendor must complete and submit an application to MCAD and pay a fee.

32.     MCAD allows local community groups and non-profit organizations to get a booth in the Market free of cost.

33.     MCAD allows buskers to perform for gratuities outside of booths with prior approval.

34.     No fundraising, political campaigning or religious proselytizing is allowed in the Union Plaza Area during the Market inside or outside of booths.

### El Paso Bans Denton's Religious Speech in Union Plaza Area during the Market

35.     On Saturday, August 24, 2019, sometime around noon, Denton went to the Market. He intended to proselytize to attendees by distributing Gospel tracts, having friendly conversations, and occasionally preaching with those attending the event.  He went alone.

36.     Denton chose this specific date and place because he knew the Market was happening in the Union Plaza Area at that time and would offer him a steady flow of people with whom he could share his Christian faith.

COMPLAINT, page 5

37.     He parked off San Francisco Avenue in the Union Plaza Area and walked toward Anthony Street. As he walked in the district, Denton noticed the Market was free and open to the public and that he could be in the area without a ticket. Admission was free.

38.     Barrels were placed on San Francisco Avenue and on the sound end of Anthony Street where it intersects with San Antonio Avenue to keep vehicular traffic out of the Market. Pedestrian access was not inhibited and anyone could freely walk in the area.

39.     Vendors were in tents. A couple of tents were on San Francisco Avenue and the tents were lined up on both sides of Anthony Street.

40.     Denton strolled around the Market looking for an open spot where he could convey his message without obstructing pedestrian traffic or disturbing activity of vendors.

41.     Denton soon found a good spot for his speech close to the intersection of Western Street and Anthony Street. Western Street functions as an alleyway and is only used for pedestrian traffic. It has bollards sitting in the middle of the street halfway between the intersection with Anthony Street and the intersection Durango Street blocking vehicular traffic.

42.     He stood a few feet into Western Street, facing Anthony Street and Union Plaza Park, hoping to address people on Anthony Street as they walked by him.

43.     This particular space where Denton stood was not in front of a vendor. It was wide open and free of pedestrian traffic.

44.     Denton began to speak with his natural voice. He did not use amplification and only spoke slightly louder than ordinary conversation. He was not hindering pedestrian traffic, disrupting any activity, or otherwise causing a disturbance.

COMPLAINT, page 6

45.     He also hoped to hand out tracts and have some conversations, but in less than a minute after he started his speech, Denton was approached by Ismael Acosta, Production and Marketing Coordinator for MCAD.

46.     Acosta was standing on the other side of Anthony Street when Denton started speaking. He soon grabbed a nearby law officer from Sheriff's Department and quickly walked across the street to meet Denton. After introducing himself, Acosta told Denton that he could not conduct his expressive activity in the Union Plaza Area.

47.     Explaining his stance, Acosta claimed the Market was private.

48.     Denton told him that he was under the impression that the Market is public, but Acosta disagreed, stating that while the Market is open to the public it is subject to private permits.

49.     Not understanding the response, Denton asked if the property where they were is public. Acosta denied this status, maintaining that the area was private at that particular time.

50.     Then, Denton asked Acosta to confirm that they were standing on city property. And Acosta confirmed this status, but indicated that the city could control activity there for this reason.

51.     Confused by the statement, Denton observed that city property could not be private property. However, Acosta contended otherwise, saying again that it was private property.

52.     Denton asked how that could be, since the area is obviously public. And Acosta, confirming that the area and the Market are open to the public, explained that the City has permits that make the Market a private market.

COMPLAINT, page 7

53.     Denton inquired how the Market could be private while on public property, but Acosta disagreed with the premise, alleging the property was not public property but city property for the duration of the Market.

54.     Acosta agreed that the area is usually public property and clarified that Union Plaza Area becomes private property when El Paso conducts the Market.

55.     Puzzled by Acosta's characterization of the property, Denton asked if he could see an ordinance substantiating this position.  Acosta indicated that he had a copy of a supporting ordinance back at his office.

56.     Denton then inquired about the consequences for continuing with his religious expression in the Union Plaza Area.  Acosta indicated and the officer accompanying him confirmed that Denton would be arrested for not complying with MCAD's request.

57.     Acosta intimated that he is also a person of faith, but because the City does not allow for religious expression in the Union Plaza Area during the Market, as a City employee, he is obliged to uphold City policy.

58.     Acosta suggested Denton could hang around in Union Plaza Area as long as he did not continue with his expression, indicating that Denton could not proselytize in any way in any part of Union Plaza Area.  Acosta added that Denton could engage in religious expression outside of the Union Plaza Area.

59.     The officer confirmed that he would arrest Denton if he did not refrain from proselytizing in any part of Union Plaza Area.

60.     The conversation concluded and Denton promptly left the Union Plaza Area.  Being deprived of his purpose for being there, Denton saw no reason to stay.

COMPLAINT, page 8

61.     If not for the enforcement of City policy banning Denton's proselytizing, and for the threat of criminal arrest against him, Denton would have continued to preach, leaflet, and converse until the Market closed that day.

### Denton Seeks Relief But El Paso Persists in Banning Denton's Expression

62.     Following his exchange with Acosta, Denton's desire to proselytize in the Union Plaza Area on Saturdays during the Market did not wane.

63.     Hoping to resolve this dilemma without litigation, Denton, through counsel, sent a letter on November 25, 2019 to the Mayor of El Paso, City Attorney, and Sheriff's Department, explaining what happened to Denton when he tried to speak in the Market, setting out the constitutional concerns with the policy, and requesting relief from the continuing ban on his expression on public streets and ways during the Market.

64.     This letter specifically asked for written assurance that he be allowed to speak on public ways inside the Market. Because of the on-going nature of the Market, the letter stressed the urgent need to hear back within two weeks of the date of the letter.

65.     Two days later, the El Paso attorney sent a letter stating that its office will investigate the matter and contact Denton's counsel if further information was needed.

66.     However, as of December 19, 2019, El Paso attorney had not responded to Denton's request. Denton's counsel attempted to call the attorney on this date, and left a voicemail, asking for a return call.

67.     Upon not receiving a return call, Denton's counsel left another voicemail on December 31, 2019, and yet another on January 9, 2020, to determine the status.

COMPLAINT, page 9

68.     Still having heard nothing from the City Attorney's office, on January 16, 2020, Denton sent another letter through counsel, reiterating the concerns and urgency, reminding that written assurance was needed to avoid litigation.

69.     On this same day, January 16, 2020, El Paso's attorney returned call and indicated that his office was still investigating the matter.

70.     A little under a week letter, on January 22, 2020, Denton's attorney spoke with El Paso's attorney, who advised of El Paso's continued investigation and that Denton should have a more substantive response in the next day or two.

71.     On January 24, 2020, Denton's attorney called to follow up on the timing of the response. El Paso's attorney advised that Denton should receive a written response within two weeks.

72.     After this time had passed, Denton's attorney called on February 4, 2020 and spoke with El Paso's attorney on February 5, 2020. During this conversation, El Paso's attorney assured that Denton would receive a response by February 11, 2020.

73.     On February 17, 2020, the City Attorney's office finally provided a written response to Denton's request. In this response, the attorney referenced Denton's initial letter of November 25, 2019, and request for written assurance. El Paso explicitly declined to provide the assurance sought.

74.     Acknowledging that the Market takes place on public streets and is open to the public, El Paso contends in the letter that the organizer of the Market, that being El Paso, could control access and activity within the Union Plaza Area.

COMPLAINT, page 10

75.    As basis, El Paso explained that the City does not allow proselytizing, as well as protesting, campaigning, and lobbying, inside the Market.

**El Paso's Policy and Practice has Irreparable and Lasting Impact on Denton's Expression**

76.    El Paso regards the arrangement between it and its own department MCAD as conveying a proprietary interest, allowing El Paso through MCAD to maintain control over city streets, sidewalks and ways in the Union Plaza Area that it would not otherwise have, and empowering it to exclude undesired expression on the public property.

77.    By virtue of this understanding, El Paso maintains a policy and practice of prohibiting religious proselytizing and other forms of speech associated with this expression in the Union Plaza Area during the Market.

78.    El Paso's application and enforcement of this policy and practice facilitates an overarching restriction on Denton's protected religious expression on city-owned public streets, sidewalks, and ways within the boundaries of the Union Plaza Area.

79.    Denton ardently desires to return to uncongested portions of public property in the Union Plaza Area during the Market and share his viewpoints and proselytize, but he is chilled and deterred from coming back and speaking due to fear of ouster and arrest.

80.    This fear of sanction severely limits Denton's constitutionally-protected expression on public streets, sidewalks and ways in the Union Plaza Area during the Market.

81.    The impact of chilling and deterring Denton from exercising his constitutional rights on public streets, sidewalks and ways during the Market constitutes irreparable harm to Denton.

COMPLAINT, page 11

82.     Denton has no adequate remedy at law for the continued denial of his constitutional rights.

## FIRST CAUSE OF ACTION: FREE SPEECH

83.     Denton's religious expression constitutes protected speech under the First Amendment.

84.     El Paso's policies and practices, and the enforcement thereof, including, but not limited to controlling expression and banning religious proselytizing on public property and the resultant ban on Denton's expression in public spaces in the Union Plaza Area during the Market:

   a.     single out religious speech for discriminatory treatment;

   b.     restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

   c.     chill the free speech of Denton and third-party citizens;

   d.     are arbitrary and allow for the exercise of unbridled discretion;

   e.     create a content-based heckler's veto that silences Denton's expression;

   f.     lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and

   g.     are unreasonable.

85.     El Paso no compelling or legitimate reason that can justify its censorship of Denton's religious viewpoints that he seeks to communicate on public streets, sidewalks, and ways.

COMPLAINT, page 12

86.     El Paso's policies and practices, and the enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

WHEREFORE, Denton respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION: DUE PROCESS

87.     El Paso's policies and practices of granting its own department power over speech on public property and the resultant ban on expression on religious speech during the Market are vague and lack sufficient objective standards to curtail the discretion of city officials. This policy and practice give El Paso abundant opportunity to enforce the policies in an *ad hoc*, arbitrary, and discriminatory manner.

88.     El Paso cannot justify its vague policies and practices.

89.     The policies and practices, and El Paso's enforcement thereof, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Denton respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## THIRD CAUSE OF ACTION: FREE EXERCISE OF RELIGION

90.     Denton, as a tenet of his Christian faith, proselytizes his faith to others.

91.     El Paso bans religious proselytizing on public streets, sidewalks and ways every Saturday for the duration of the Market, directly affecting Denton's ability to share and exercise his faith.

COMPLAINT, page 13

92.     The policies and practices, particularly, the ban on religious proselytizing in the Union Plaza Area during the Market, and El Paso's enforcement thereof, violate the Free Exercise of Religion Clause of the First Amendment to the United States Constitution.

WHEREFORE, Denton respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Denton respectfully prays for relief in that this Court:

A.     Assume jurisdiction over this action;

B.     Enter a judgment and decree declaring that the actions taken by El Paso in prohibiting Denton from sharing his religious viewpoints on a public streets, sidewalks, and ways during the Market on August 24, 2019, violated Denton's constitutional rights, namely, his right to free speech, due process, and free exercise of religion.

C.     Enter a judgment and decree declaring that El Paso's policy and practice of controlling expression taking place on public streets, sidewalks, and ways during the Market and explicitly prohibiting religious proselytizing is unconstitutional on its face and as applied to Denton's desired speech (leafleting, conversing, and preaching) because it violates Denton's rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D.     Enter a preliminary and permanent injunction enjoining El Paso, its agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying El Paso policy and practice of controlling expression and prohibiting religious proselytizing on public streets, sidewalks and ways in Union Plaza Area during the El

COMPLAINT, page 14

Paso Art and Farmers Market;

    E.    Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

    F.    That this Court award Denton nominal damages in the amount of $1.00 arising from the acts of El Paso as an important vindication of his constitutional rights;

    G.    That this Court award Denton his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

    H.    Grant such other and further relief as appears to this Court to be equitable and just.

Respectfully submitted,

NATHAN W. KELLUM
TN BAR #13482; MS BAR # 8813
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN  38117
(901) 684-5485 – Telephone
(901) 684-5499 – Fax
Attorney for Plaintiff Ryan Denton

COMPLAINT, page 15

## **VERIFICATION OF COMPLAINT**

I, Ryan Denton, a citizen of the United States and a resident of El Paso, Texas, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

RYAN DENTON

COMPLAINT