IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RYAN DENTON, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. EP-20-CV-85-KC |
| CITY OF EL PASO, | § § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

Before the Court is "Plaintiff's Motion for Summary Judgment" ("Plaintiff's MSJ") (ECF No. 43) and "Defendant's Motion for Leave to Deposit Plaintiff's Requested Damages with the Court, for an Order Directing the Payment of Such Damages over to the Plaintiff, and/or to Grant Plaintiff's Injunctive Relief and/or Dismiss this Action for Mootness and to Deny or Modify any Award of Attorney's Fees" ("Defendant's Motion") (ECF No. 44). On March 2, 2022, United States District Judge Kathleen Cardone referred Plaintiff's MSJ and Defendant's Motion to United States Magistrate Judge Robert Castañeda. (Text orders dated March 2, 2022); *see* 28 U.S.C. § 636(b). On March 15, 2022, Plaintiff responded to Defendant's Motion. (ECF No. 45.) To date, Defendant has not responded to Plaintiff's MSJ.

For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's MSJ should be **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion should be **GRANTED IN PART** and **DENIED IN PART**.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

On August 24, 2019, Plaintiff Ryan Denton ("Plaintiff" or "Denton") went to the El Paso Downtown Art and Farmers Market in Union Plaza ("Market") and tried to share his religion with members of the public by "proselytiz[ing] through literature distribution, consensual conversation, and unamplified preaching." (ECF No. 43:8–9.) Defendant City of El Paso ("Defendant" or "El Paso"), which operates the Market through its Museums and Cultural Affairs Department, denied Plaintiff the opportunity to proselytize. (*Id.* at 8–10.) After the parties failed to resolve the issue by letter correspondence, Plaintiff filed this action on March 27, 2020. (*Id.* at 11); (ECF No. 1.) Plaintiff's Complaint alleges that Defendant's "barring First Amendment expression and religious proselytizing" within and during the Market ("Policy")[2] "violat[ed] his constitutional rights to free speech, free exercise of religion, and due process." (ECF No. 43:11.)

On April 3, 2020, Plaintiff requested a preliminary injunction to enjoin Defendant from executing the Policy. (ECF No. 6:8.) On July 28, 2020, the Court denied Plaintiff's request by reasoning that he "ha[d] not made a clear showing of his likelihood of success on the merits of any of his claims, nor ha[d] he made a clear showing of imminent, irreparable harm" as required for a preliminary injunction ("PI Order"). (ECF No. 25:33.) Plaintiff appealed the PI Order. (ECF No. 26.) On July 6, 2021, the Fifth Circuit Court of Appeals vacated the PI Order, reasoning that Plaintiff met the requirements for a preliminary injunction in part by demonstrating a likelihood of success on the merits of his free speech claim and a substantial threat of irreparable harm. (ECF

---

[1] While recounting the factual and procedural background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

[2] The Court treats the Policy to include: (1) an El Paso Museums and Cultural Affairs Department document titled "About the Downtown Artist and Farmers Market" (ECF No. 43-1:17–27); (2) Defendant's statements and admissions (ECF Nos. 9, 11); and (3) the parties' statement of undisputed facts (ECF No. 20:3). *See* (ECF No. 43:8–11); Fed. R. Civ. P. 56(c), (e) advisory committee's note to 2010 amendment; W.D. Tex. Civ. R. 7(d)(2); *Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (holding that a court may accept the movant's facts as undisputed when the nonmovant does not respond to a summary judgment motion).

No. 30:2, 8–9.) The Fifth Circuit remanded the case back to this Court with instructions to grant the preliminary injunction, and on July 27, 2021, the Court did so. (*Id.*); (ECF No. 31.) On February 4, 2022, the undersigned conducted a mediation with the parties, which did not result in resolution. (ECF No. 41.)

On March 1, 2022, each party filed its instant Motion. (ECF Nos. 43, 44.) Plaintiff's MSJ seeks summary judgment on his claims that Defendant's Policy violated his rights to free speech, free exercise, and due process. (ECF No. 43:13.) In Defendant's Motion, Defendant argues that its Policy has been modified such that "Plaintiff has already obtained the relief sought from this Court," and so, Defendant "moves that this Court enter whatever injunctive relief it believes is appropriate, and/or issue an order that would dismiss this case for mootness." (ECF No. 44:1–3.)[3] Defendant also seeks to pay Plaintiff's requested nominal damages and asks the Court to deny or modify an award of attorney's fees. (*Id.* at 2–3.)

## II. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if and only if proof of its existence might affect the outcome of the case." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). "There exists a 'genuine dispute' about a material fact . . . when the evidence would allow a reasonable jury to return a verdict for the nonmovant." *Id.*

---

[3] Although Defendant states that it has changed its Policy over the course of this litigation, Plaintiff's MSJ concerns the Policy as it existed on August 24, 2019, the date of the alleged rights violations. (ECF Nos. 43:9–11, 44:1–2.) Thus, for purposes of evaluating Plaintiff's MSJ, the Court looks at the original Policy. The Court will then separately consider Defendant's arguments regarding its subsequent changes to the Policy.

A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant carries that burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Id.* at 323–25. The ultimate inquiry is whether the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In ruling on a motion for summary judgment, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Courts, however, "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). When there is no response to a motion for summary judgment, the court may not grant a default summary judgment but may accept the movant's evidence as undisputed. Fed. R. Civ. P. 56(e) advisory committee's note to 2010 amendment; *Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015); *see* W.D. Tex. Civ. R. 7(d)(2).

b. **Mootness**

"A claim is moot when a case or controversy no longer exists between the parties." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017). A case can become moot "when the issues presented are no longer 'live'" or when "the parties lack a legally cognizable interest in the outcome." *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Further, the mootness doctrine "applies to equitable relief." *Brinsdon*, 863 F.3d at 345.

"When a defendant's voluntary cessation of conduct seems to moot a plaintiff's claim, the defendant bears the 'heavy burden' to make it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Kovac v. Wray*, 449 F. Supp. 3d 649, 653 (N.D. Tex. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Government defendants face a slightly lesser burden of proof because they are "accorded a presumption of good faith because they are public servants, not self-interested private parties." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). Nonetheless, "[a] government defendant must still present evidence of its formally announced changes in official policy regarding the plaintiff whose claims the government asserts should be dismissed for mootness." *Kovac*, 449 F. Supp. 3d at 654.

The term "moot" also has another meaning. "[C]ourts also use the term 'moot' to 'refer to an issue that need not be decided in light of the resolution in the same opinion of another issue.'" *Muniz v. City of San Antonio*, 476 F. Supp. 3d 545, 562 n.18 (W.D. Tex. 2020) (quoting *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1397 (7th Cir. 1990)). "The decision to reach or avoid an unnecessary issue falls within the court's discretion, and courts regularly decline to consider additional constitutional theories of relief when doing so is unnecessary to award the requested relief." *Id.* (citation omitted) (collecting cases). "Courts that have declined to address additional constitutional claims do so both in furtherance of judicial economy and in order to avoid opining on otherwise avoidable, abstract constitutional propositions." *Id.*

### III. DISCUSSION

The Court will first evaluate the claims and requests for relief in Plaintiff's MSJ. Then, the Court will evaluate the arguments in Defendant's Motion.

### a. Plaintiff's MSJ

### 1. Defendant's Policy as a Free Speech Violation

The First Amendment, applied to states and municipalities through the Fourteenth Amendment, prohibits laws that "abridg[e] the freedom of speech." U.S. Const. amend. I; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  However, the government may limit speech in certain situations, depending in part on the type of forum where the speech is occurring.  *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020).  Here, the parties agree that Plaintiff tried to proselytize on "the public streets, sidewalks[,] and ways within the Market footprint," which are "traditional public fora."  (ECF No. 43:15); see *Freedom from Religion Found.*, 955 F.3d at 426.

To evaluate a regulation of speech in a traditional public forum, the court must first determine whether that regulation is content-based by "target[ing] speech based on its communicative content," or content-neutral by regulating communication without explicit or implicit regard to its content.  *Reed*, 576 U.S. at 163–66; *see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983).  If the regulation "defin[es] regulated speech by particular subject matter," it is content-based "on its face" and it cannot be made content-neutral by the government's purpose underlying the regulation.  *Reed*, 576 U.S. at 163–64.

A content-based regulation receives strict scrutiny, meaning the government must show that the regulation is necessary to achieve a compelling state interest and is the least restrictive means of doing so.  *Id.*; *Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 666 (2004).  A content-neutral regulation receives intermediate scrutiny, meaning the government must show that the regulation is "narrowly tailored to serve a significant government interest[] and leave[s] open ample alternative channels of communication."  *Perry*, 460 U.S. at 45.  For intermediate scrutiny, narrow

tailoring means the regulation cannot "burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

Plaintiff argues that Defendant's Policy violates his right to free speech because the Policy is content-based and does not meet strict scrutiny. (ECF No. 43:15–17.) Specifically, he argues that Defendant's Policy is content-based because it expressly names "religious proselytizing" as an activity to be prohibited during the Market within the Market footprint, thus targeting the "religious" subject matter. (*Id.* at 16–17.) Plaintiff differentiates this blanket prohibition from Defendant's treatment of other types of speech content, "such as pro-life, death penalty, and environmental protest[s]," which Defendant would allegedly prohibit on a case-by-case basis due to the perceived disruption of such speech during the Market. (*Id.* at 17.) Plaintiff argues that Defendant "offers no reason, much less a compelling one, for this stark disparity in the treatment of content" and does not show the restriction on religious proselytizing to be the least restrictive means of minimizing disruption in the Market. (*Id.*)

Additionally, Plaintiff argues that the Policy's ban of "First Amendment activities," though not necessarily content-based, does not meet intermediate scrutiny. (*Id.* at 21–24); *see also* (*id.* at 9, 12 (citing ECF Nos. 9:6, 11, 20:3)). Specifically, Plaintiff argues that "[e]ven assuming El Paso's interest in avoiding disruption in the Market is a significant one," its "First Amendment activities" ban is not narrowly tailored to serve that interest because it is "overly restrictive." (*Id.* at 22–23.) Further, Plaintiff argues that the Policy offers no "ample alternative channels of communication" because the "First Amendment activities" prohibition deprives him of any "meaningful opportunity to win the attention of his desired audience." (*Id.* at 23–24.)

Based on Plaintiff's foregoing arguments and the Fifth Circuit's holding that the Policy was content-based and failed to meet strict scrutiny, the Court finds that Plaintiff is entitled to summary judgment on his free speech claim. *See* Fed. R. Civ. P. 56(c); (ECF No. 30), reported at *Denton v. City of El Paso*, 861 F. App'x 836 (5th Cir. 2021). Defendant's Policy barring religious proselytization is content-based on its face because it defines the regulated speech by its subject matter: religious proselytization. *Reed*, 576 U.S. at 163; *see* (ECF No. 43-1:24.) Further, the Policy fails to meet strict scrutiny. Even presuming that Defendant has a compelling interest in promoting public safety and preventing disruption during the Market, Defendant has not shown that the Policy is both necessary and the least restrictive means of achieving that interest. *Ashcroft*, 542 U.S. at 666.[4]

As to Plaintiff's arguments regarding Defendant's ban on "First Amendment activities," it is unclear to what extent such a ban has existed in the Policy. The Court does not see a specific mention of "First Amendment activities" in the "About the Downtown Artist and Farmers Market" document. *See* (ECF No. 43-1:17–27.) However, Plaintiff cites to various statements made by Defendant during the pendency of this case to support that claim. *See* (ECF No. 43:9, 12); *see also, e.g.*, (ECF No. 11:7) ("It is precisely because [Defendant] is aware that it may not favor one viewpoint, or discriminate against one type of speech that it has chosen to require only that all [F]irst [A]mendment activity be conducted immediately outside of the [Market] footprint on the public ways."); (ECF No. 20:3) (listing as one of the parties' undisputed facts that Defendant's Policy "prohibits First Amendment activities outside of booths at the Market"). The Court construes these statements as part of the Policy. *See supra* note 2. Based on these statements, the

---

[4] Plaintiff also argues that Defendant's Policy on religious proselytization fails to meet intermediate scrutiny. *See* (ECF No. 43:17–21.) The Court deems that argument irrelevant because the Court treats that part of the Policy as content-based, not content-neutral. Thus, the Court does not address the intermediate scrutiny argument.

Court accepts Plaintiff's characterization of the Policy's prohibition on First Amendment activities. The Court finds that a broad restriction on "First Amendment activities" risks "burden[ing] substantially more speech than is necessary," even with Defendant's clarifications that such speech could occur outside of the Market footprint or inside of Market booths. *Ward*, 491 U.S. at 799; *see* (ECF No. 11:7–8). Therefore, Defendant has not shown that its Policy concerning First Amendment activities is narrowly tailored, thus failing intermediate scrutiny.

In sum, Plaintiff is entitled to summary judgment on his free speech claim because he has met his burden of showing no genuine issue of material fact on that claim. *Celotex*, 477 U.S. at 322–23. Defendant has not shown there to be a genuine issue for trial on that claim. *Id.* at 323–25. Therefore, the Court recommends granting Plaintiff's MSJ as to his free speech claim.

### 2. Plaintiff's Requested Relief for Free Speech Claim

Plaintiff asks for nominal damages, declaratory relief, and permanent injunctive relief as remedies for Defendant's violation of Plaintiff's constitutional rights. (ECF Nos. 1:17–18, 43:25); *see* 28 U.S.C. §§ 2201–2202, 42 U.S.C. § 1983.[5]

Plaintiff has proven that Defendant violated his First Amendment free speech rights by implementing its Policy, and therefore he is entitled to nominal damages. *See Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). Thus, the Court recommends granting Plaintiff's request for nominal damages.

For declaratory relief, Plaintiff seeks "a judgment and decree declaring that the actions taken by El Paso in prohibiting Denton from sharing his religious viewpoints . . . during [and within] the Market on August 24, 2019, violated Denton's constitutional rights, namely, his right to free speech, due process, and free exercise of religion." (ECF No. 1:17.) For the foregoing

---

[5] Plaintiff has not yet moved for attorney's fees, so the Court will not address that issue here. *See* Fed. R. Civ. P. 54(d)(2)(A); (ECF No. 45).

reasons and additional reasons set forth in Section III(a)(3) of this Report and Recommendation below, the Court recommends granting Plaintiff's request for declaratory relief as to his right to free speech but denying his request as to due process and free exercise of religion.

> Plaintiff also seeks:
>
> a judgment and decree declaring that El Paso's policy and practice of controlling expression taking place on public streets, sidewalks, and ways during the Market and explicitly prohibiting religious proselytizing is unconstitutional on its face and as applied to Denton's desired speech (leafleting, conversing, and preaching) because it violates Denton's rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments.

(*Id.*) To remain within the scope of the "actual controversy" here, the Court recommends granting Plaintiff's request as to the Policy's prohibition of "First Amendment activities" and "religious proselytizing," and otherwise denying Plaintiff's request in all other respects. *See Medrano v. Salazar*, No. 5:19-cv-00549-JKP, 2020 WL 589537, at *3 (W.D. Tex. Feb. 5, 2020) (listing one requirement for declaratory judgment as the existence of an "actual controversy").

Plaintiff also wishes to make the preliminary injunction permanent. (ECF No. 43:26.) Specifically, he seeks to "enjoin[] El Paso, its agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying El Paso['s] policy and practice of controlling expression and prohibiting religious proselytizing on public streets, sidewalks, and ways in Union Plaza Area during the [Market]." (ECF No. 1:17–18.)

The party seeking a permanent injunction must establish: "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dall.*, 460 F.3d 607, 611 (5th Cir. 2006). Additionally, the Court must take care "to avoid entering forward-looking injunctive relief when

there is uncertainty regarding the likelihood or nature of future harm." *Muniz*, 476 F. Supp. 3d at 563; *see also Casas v. City of El Paso*, 502 F. Supp. 2d 542, 549–50 (W.D. Tex. 2007).

Plaintiff meets all four requirements for a permanent injunction. First, as discussed, Plaintiff has proven success on the merits of his free speech claim. Second, failure to grant an injunction would cause irreparable harm because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Third, Plaintiff's injury outweighs any harm of an injunction to Defendant because the injunction must be limited in scope, *Muniz*, 476 F. Supp. 3d at 563, Defendant has already made efforts to change its Policy (ECF No. 44:2–3), and Defendant itself asks the Court to "enter whatever injunctive relief it believes is appropriate" in its Motion (*id.* at 3). Finally, "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church*, 697 F.3d at 298 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). Thus, the Court finds that Plaintiff meets the requirements for a permanent injunction. Accordingly, the Court recommends granting an injunction that is limited to the language used by Defendant in its Policy that the Court finds unconstitutional here. Specifically, the Court recommends enjoining Defendant from naming "First Amendment activities" and "religious proselytizing" as categorically banned from the Market. Injunctive relief in any other respect should be denied.

### 3. Defendant's Policy as Free Exercise and Due Process Violations

In addition to his free speech claim, Plaintiff argues that the Policy's ban on religious proselytizing violates his right to free exercise of religion. (ECF No. 43:21.) He also argues that by "banning First Amendment activities outside of [Market] booths," the Policy violates his right

to due process because that prohibition is unconstitutionally vague. (*Id.* at 24.) Compared to Plaintiff's free speech claim, the only difference in remedy he seeks for these claims is declaratory judgment that on August 24, 2019, Defendant violated Plaintiff's rights to due process and free exercise. (ECF No. 1:17.) Because the Court already recommends granting Plaintiff declaratory and other relief for his free speech claim, the Court finds it "neither necessary nor prudent" to evaluate Plaintiff's other constitutional claims and thus considers them "moot." *Muniz*, 476 F. Supp. 3d at 562 n.18 (collecting cases). Therefore, the Court recommends denying Plaintiff's MSJ as to his free exercise and due process claims and dismissing those claims.

### b. Defendant's Motion

In its Motion, Defendant first "request[s] permission to [d]eposit Plaintiff's requested one dollar ($1.00) of damages and whatever other nominal damages the Court deems appropriate, with the Court, and that the Court further enter an order directing the payment of such deposited damages over to Plaintiff." (ECF No. 44:2.) As the Court finds that Plaintiff is entitled to his requested one dollar in nominal damages, the Court recommends granting Defendant's Motion on the one dollar nominal damages. *See* Fed. R. Civ. P. 67; W.D. Tex. Civ. R. 67.

Defendant also claims that it has modified its Policy by "remov[ing] from its documents the language complained of by Plaintiff, and . . . designat[ing] a portion of the [M]arket for use by Plaintiff and other similar parties for the expression of their speech." (ECF No. 44:2–3.) Accordingly, Defendant "moves that this Court enter whatever injunctive relief it believes is appropriate, and/or issue an order that would dismiss this case for mootness." (*Id.* at 3.) The Court may presume that Defendant, a governmental entity, acts in good faith when it says that it changed its Policy to eliminate the instant controversy. *See Sossamon*, 560 F.3d at 325. However, aside from simply stating that it has changed its Policy, Defendant does not present evidence of such

Policy changes in its Motion. Thus, Defendant has not met its burden of proving mootness in the sense that the harm "could not reasonably be expected to recur," and the Court recommends denying Defendant's Motion as to mootness. *See Kovac*, 449 F. Supp. 3d at 654. As to injunctive relief, the Court recommends granting Defendant's Motion so that it aligns with the injunctive relief recommended with respect to Plaintiff's MSJ.

Regarding attorney's fees, the Court finds that Defendant's Motion is premature because Plaintiff has not yet moved for attorney's fees. *See* Fed. R. Civ. P. 54(d)(2)(A); (ECF No. 45). Thus, the Court recommends denying Defendant's Motion as to attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** the following:

- Plaintiff's MSJ (ECF No. 43) be:

    - **GRANTED** as to Plaintiff's free speech claim and nominal damages;

    - **DENIED** as to Plaintiff's free exercise of religion and due process claims;

    - **GRANTED IN PART** such that declaratory relief consists of a judgment and decree declaring that: (1) El Paso's actions in prohibiting Denton from sharing his religious viewpoints during and within the Market on August 24, 2019, violated Denton's constitutional right to free speech; and (2) El Paso's policy and practice of categorically prohibiting "First Amendment activities" and "religious proselytizing" during and within the Market is unconstitutional on its face and as applied to Denton's desired speech because it violates Denton's and other third parties' constitutional right to free speech. Any other request for declaratory relief should be **DENIED**; and

- - **GRANTED IN PART** such that injunctive relief consists of enjoining El Paso from naming "First Amendment activities" and "religious proselytizing" as activities categorically banned from the Market. Any other request for injunctive relief should be **DENIED**.
- Defendant's Motion (ECF No. 44) be:
  - **GRANTED** as to nominal damages;
  - **DENIED** as to mootness and attorney's fees; and
  - **GRANTED IN PART** such that injunctive relief consists of enjoining El Paso from naming "First Amendment activities" and "religious proselytizing" as activities categorically banned from the Market. Any other request for injunctive relief should be **DENIED**.

**SIGNED** this 29th day of March, 2022.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**