IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RYAN DENTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. EP-20-CV-85-KC |
| | § | |
| CITY OF EL PASO, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

Before the Court is "Plaintiff's Motion for Attorney's Fees and Non-Taxable Expenses" ("Motion"). (ECF No. 49.) On June 2, 2022, United States District Judge Kathleen Cardone referred Plaintiff's Motion to United States Magistrate Judge Robert Castañeda. (Text order dated June 2, 2022); *see* 28 U.S.C. § 636(b); Fed. R. Civ. P. 54(d)(2)(D) ("[T]he court . . . may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."). To date, Defendant has not responded to Plaintiff's Motion.

For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Motion should be **GRANTED IN PART** and **DENIED IN PART**.

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On August 24, 2019, Plaintiff Ryan Denton ("Plaintiff" or "Denton") went to the El Paso Downtown Art and Farmers Market in Union Plaza ("Market") and tried to share his religion with members of the public by "proselytiz[ing] through literature distribution, consensual conversation, and unamplified preaching." (ECF No. 43:8–9.) Defendant City of El Paso ("Defendant" or "the

---

[1] While recounting the factual and procedural background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

1

City"), which operates the Market through its Museums and Cultural Affairs Department, denied Denton the opportunity to proselytize. (*Id.* at 8–10.) After the parties failed to resolve the issue by letter correspondence, Denton filed this action on March 27, 2020. (*Id.* at 11); (ECF No. 1.) Denton's Complaint alleges that the City "violat[ed] his constitutional rights to free speech, free exercise of religion, and due process" by "barring First Amendment expression and religious proselytizing" within and during the Market ("Policy"). (ECF No. 43:11.)

On April 3, 2020, Denton requested a preliminary injunction to enjoin the City from executing the Policy. (ECF No. 6:8.) On July 28, 2020, the Court denied Denton's request by reasoning that he "ha[d] not made a clear showing of his likelihood of success on the merits of any of his claims, nor ha[d] he made a clear showing of imminent, irreparable harm" as required for a preliminary injunction ("PI Order"). (ECF No. 25:33.) Denton appealed the PI Order. (ECF No. 26.) On July 6, 2021, the Fifth Circuit Court of Appeals vacated the PI Order, reasoning that Denton met the requirements for a preliminary injunction in part by demonstrating a likelihood of success on the merits of his free speech claim and a substantial threat of irreparable harm. (ECF No. 30:2, 8–9.) The Fifth Circuit remanded the case back to this Court with instructions to grant the preliminary injunction, and on July 27, 2021, the Court did so. (*Id.*); (ECF No. 31.) On February 4, 2022, the undersigned conducted a mediation with the parties, which did not result in resolution. (ECF No. 41.)

On March 1, 2022, Denton filed a Motion for Summary Judgment (ECF No. 43), and the City filed a "Motion for Leave to Deposit Plaintiff's Requested Damages with the Court, for an Order Directing the Payment of Such Damages over to the Plaintiff, and/or to Grant Plaintiff's Injunctive Relief and/or Dismiss This Action for Mootness and to Deny or Modify Any Award of Attorney's Fees" (ECF No. 44). On March 29, 2022, this Court issued a Report and

Recommendation granting in part and denying in part each motion. (ECF No. 46.) On May 9, 2022, United States District Judge Kathleen Cardone issued an Order Adopting Report and Recommendation and a Final Judgment. (ECF Nos. 47–48.) On May 20, 2022, Denton filed the instant Motion for Attorney's Fees and Non-Taxable Expenses ("Motion") (ECF No. 49), a Memorandum in Support of Plaintiff's Motion for Attorney's Fees and Non-Taxable Expenses (ECF No. 50) ("Memorandum"), and a Bill of Costs (ECF No. 51).

To date, the City has not responded to Denton's Motion. The Court notes that the City previously raised arguments regarding attorney's fees in its March 1 motion. *See* (ECF No. 44:2–9.) However, the Court denied Defendant's March 1 motion with respect to attorney's fees because Denton had not yet moved for attorney's fees, and so, Defendant's arguments were premature. *See* (ECF Nos. 46:9, 13–14; 47:2–4.)

## II. LEGAL STANDARDS

### a. Attorney's Fees

Under 42 U.S.C. § 1988, a prevailing party in civil rights litigation "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976)). A plaintiff prevails if he "has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought." *Taylor v. Sterrett*, 640 F.2d 663, 669 (5th Cir. 1981). In other words, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). The plaintiff must prove that the request for attorney's fees is reasonable. *See Hensley*, 461 U.S. at 434, 437 (noting that the fee applicant should meet this burden with proper documentation and by exercising "billing

3

judgment" through the exclusion of "excessive, redundant, or otherwise unnecessary" hours). A fee is reasonable if it "is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," without producing a windfall for the attorney. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

The Court ultimately has discretion to determine the reasonableness and necessity of attorney's fees. *Id.* at 558; 42 U.S.C. § 1988(b). To determine the reasonableness and necessity of attorney's fees, the Court first considers the "lodestar" calculation, which equals the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *Murphy v. Smith*, 138 S. Ct. 784, 789 (2018). There is a "strong presumption that the lodestar figure . . . represents a 'reasonable' fee." *Id.* (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Nonetheless, the Court may adjust the lodestar, based on the facts of the case and the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) ("*Johnson* factors"). *Combs v. City of Huntington*, 829 F.3d 388, 391–94 (5th Cir. 2016).[2]

> The *Johnson* factors are: (1) the time and labor required to represent the client . . . ; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 717–19).

---

[2] The Court notes that while the U.S. Supreme Court has described the lodestar method and *Johnson* factor method as two distinct approaches for assessing reasonable attorney's fees under 42 U.S.C. § 1988, *Perdue*, 559 U.S. at 550–52, the Fifth Circuit has continued to apply the *Johnson* factors as a second step after calculating the lodestar. *See, e.g.*, *Combs*, 829 F.3d at 393–95.

4

Various *Johnson* factors may be "subsumed within the initial [lodestar] calculation . . . and should not be double-counted" at the adjustment stage. *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). An upward adjustment of the lodestar is "permissible only in a rare and exceptional class of cases." *Combs*, 829 F.3d at 394; *see Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 925–26 (5th Cir. 2021).

## III. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 54 and 42 U.S.C. § 1988, Denton seeks an award of attorney's fees and non-taxable expenses in the amount of $97,032.15. (ECF No. 49:1.) In support of his Motion, Denton attaches a "Task-based Time Fee Statement from the Center for Religious Expression" ("Fee Statement") (ECF No. 49-3), along with declarations of Denton's attorney Nathan Kellum ("Kellum") (ECF No. 49-4), Denton's attorney M. Anthony Mangini ("Mangini") (ECF No. 49-5), and attorney David Hacker ("Hacker") (ECF No. 49-6). (ECF No. 49-2:2.) Denton also filed a Memorandum in support of the Motion. (ECF No. 50.) Additionally, pursuant to Local Rule CV-54(a), Denton filed a Bill of Costs for taxable expenses totaling $1,218.30. (ECF No. 51); W.D. Tex. Civ. R. 54(a).

First, the Court finds that Denton is a prevailing party under 42 U.S.C. § 1988 because Denton brought his claims under 42 U.S.C. § 1983 and the District Court awarded Denton nominal damages and entered a declaratory judgment and permanent injunction for Denton. *See* (ECF Nos. 1:3; 48.)[3] Finding no "special circumstances" to "render such an award unjust," the Court finds

---

[3] The Court notes that the District Court granted Denton relief for his free speech claims but denied him relief for his free exercise and due process claims. (ECF No. 47:2.) Nonetheless, Denton is still a prevailing party for 42 U.S.C. § 1988 purposes, even if only partially. *See, e.g.*, *Coleman v. Hous. Indep. Sch. Dist.*, No. 98-20692, 1999 WL 1131554, at *5 (5th Cir. Nov. 8, 1999). Here, the Court finds that "the successful and unsuccessful claims involve a 'common core of facts' or are based upon 'related legal theories,' such that "attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success." *Id.* (quoting *Hensley*, 461 U.S. at 435). In Section III.b.2. below, the Court considers whether the degree of success obtained warrants an adjustment in the fee award. *See Hensley*, 461 U.S. at 440 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

that Denton is entitled to recover reasonable attorney's fees and costs under 42 U.S.C. § 1988. *Hensley*, 461 U.S. at 429; *see Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014). Thus, the Court will proceed to calculate the lodestar and to consider any lodestar adjustments.

### a. Lodestar Calculation

A reasonable hourly rate is "based on prevailing community standards for attorneys of similar experience in similar cases." *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). The relevant community is "the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Cts. Trying Crim. Cases*, 148 F.3d 554, 558 (5th Cir. 1998), *abrogated on other grounds by Sanchez v. City of Austin*, 774 F.3d 873 (5th Cir. 2014)). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.* at 368.

A reasonable number of hours excludes "excessive, duplicative, or inadequately documented" time. *Combs*, 829 F.3d at 392 (quoting *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379–80 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

### 1. Reasonable Rates

Denton seeks attorney's fees at hourly rates of $375 for Kellum and $225 for Mangini. (ECF Nos. 49-3:1; 50:4.) Denton argues that these rates are reasonable because they "are in line with the prevailing market rates in the Western District of Texas and El Paso for like attorneys." (ECF No. 50:4); *see also id.* at 5 (collecting cases). To support his claim that the requested rates

are reasonable, Denton provides the declarations of his attorneys, Kellum and Mangini, and the declaration of attorney David Hacker. (ECF Nos. 49-4:16; 49-5:3; 49-6:3.)[4]

Although Denton provides case law to demonstrate that the requested hourly rates are reasonable for the El Paso community, this Court acknowledges other case law that says differently. *Compare Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immigr. & Customs Enf't*, No. EP-19-CV-00236-FM, 2021 WL 289548, at *12–13 (W.D. Tex. Jan. 28, 2021) (finding $375 to be a reasonable hourly rate for El Paso civil rights lawyers in a Freedom of Information Act case), *with, e.g.*, *Burns v. Nielsen*, No. EP-17-CV-00264-DCG, 2021 WL 534711, at *6 (W.D. Tex. Feb. 12, 2021) (finding $250 for a more experienced attorney and $185 for a less experienced attorney to be reasonable rates in El Paso for an employment discrimination case). The divergence in rate assessments is partially due to disagreement amongst courts about whether to rely on survey data to determine a reasonable rate. *Compare Diocesan*, 2021 WL 289548, at *12 ("After consideration of the significant limitations of the [State Bar of Texas 2015 Hourly] Fact Sheet, this court relies on the three attorney declarations supporting the Motion, which compellingly concur that the requested rate is reasonable."), *with Burns*, 2021 WL 534711, at *5 ("The Court looks to the State Bar of Texas's '2015 Hourly Rate Fact Sheet' . . . for additional guidance. *See Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (stating that district court was entitled to rely on state bar surveys in determining reasonable hourly rates)."). However, in this case, the Court has not been presented with survey data to consider in determining reasonable rates.

Based on case law, the record before the Court, and the Court's knowledge of El Paso market rates, the Court finds a reasonable hourly rate for Kellum to be $325 and a reasonable

---

[4] Hacker states that he practices in Austin, Texas and is involved in nationwide litigation. (ECF No. 49-6:1.) However, it is unclear to what extent Hacker practices in the El Paso community specifically versus the Western District of Texas broadly. *See* (*id.* at 1–3.)

7

hourly rate for Mangini to be $200. Accordingly, the Court will calculate the lodestar by awarding Kellum's time at $325 per hour and Mangini's time at $200 per hour.

### 2. Reasonable Hours

Regarding reasonable hours, Denton seeks attorney's fees for a total of 268.9 hours, which reflects a downward adjustment from the recorded 390.2 total expended hours. *See* (ECF Nos. 49-3:29; 50:2) (adjusting hours and requesting fees for 230.9 hours expended by Kellum and 38 hours expended by Mangini).

The Court recognizes that Denton's attorneys exercised billing judgment in certain respects. For example, Denton's counsel deducted 120.3 total hours for legally substantive tasks, clerical tasks, and travel. *See generally* (ECF No. 49-3.) Additionally, Denton's counsel sent only one attorney to proceedings and decided not to conduct depositions. *See* (ECF No. 49-4:12.) However, the Court finds that further reduction of the adjusted hours is warranted to reduce "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434.

First, the Court will consider some examples of Kellum's and Mangini's hours that may or may not warrant reduction. Following this discussion, the Court will determine a reasonable percentage reduction to be applied to Denton's total request for attorney's fees. *See Saizan*, 448 F.3d at 799 ("The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment."); *see, e.g.*, *Muniz v. City of San Antonio*, No. 5:18-cv-01002-OLG (W.D. Tex. Feb. 3, 2021) (Order Granting in Part and Denying in Part Motion for Attorney's Fees), ECF No. 61:21 & n.20 (collecting cases in which courts implemented percentage reductions to Kellum's and Mangini's hours "rather than making separate reductions for each item-by-item entry").

*i. Initial Suit Papers*

After adjustments, Denton seeks attorney's fees for Kellum's and Mangini's work amounting to roughly 22.8 hours expended prior to the drafting of the Complaint, 22.6 hours for drafting the Complaint, 30.8 hours for preparing the Motion for Preliminary Injunction and supporting materials, and 7.2 hours for replying to Defendant's response to such motion. (ECF No. 49-3:1–5, 8, 10–11.)

In similar cases litigated by Kellum, other courts have found such hourly sums to be excessive because, given Kellum's "significant expertise" in First Amendment litigation and appeals, "the preparation of the initial suit papers" is "a purely routine activity." *Grisham v. City of Fort Worth*, No. 4:15-CV-324-A, 2016 WL 8606770, at *3–4 & n.6 (N.D. Tex. Dec. 16, 2016) (collecting cases); *see also, e.g.*, *Stockstill v. City of Picayune*, No. 1:16CV4-LG-RHW, 2017 WL 6327578, at *3–4 (S.D. Miss. Dec. 11, 2017) (reducing Kellum's and Mangini's hours for attorney's fees sought in a similar First Amendment case). In *Grisham*, Kellum successfully represented a plaintiff who brought First Amendment claims, similar to those in the instant case, against a municipality. *See Grisham v. City of Fort Worth*, 837 F.3d 564, 566–67 (5th Cir. 2016). On remand, the U.S. District Court for the Northern District of Texas found Kellum's requested 38.9 hours for preparation of the complaint and 27.6 hours for preparation of the motion for preliminary injunction and related papers to be excessive. *See Grisham*, 2016 WL 8606770, at *3–4. That court reasoned that Kellum's "total time devoted to preparation of the initial pleadings should not have been more than 20 hours," with "five or six" of those hours devoted to drafting the complaint after investigation. *Id.*

Similarly, in *Muniz v. City of San Antonio*, the court found twenty-five hours for drafting the complaint to be "plainly unreasonable, especially for an attorney of Kellum's caliber and with

9

Kellum's experience investigating and litigating similar claims." *Muniz*, No. 5:18-cv-01002-OLG (Order at 13–14), ECF No. 61:13–14. Though that court was "hesitant to determine" the exact number of hours that it should have taken Kellum and Mangini to complete specific tasks, the court ultimately imposed a thirty-five percent reduction on the requested hours, in part due to the excessive nature of the requests. *Id.* at 14, 23.

This Court agrees with such reasoning, especially given the extent of both Kellum's and Mangini's experience in this particular kind of case. *See* (ECF Nos. 49-4:1–4; 49-5:1–2.) Thus, the Court finds that Denton's attorneys' adjusted hours for the work prior to the Complaint, the drafting of the Complaint, and the drafting of the Motion for Preliminary Injunction and related materials, are excessive and warrant reduction.

*ii. Appeal*

Regarding Denton's appeal of the District Court's denial of preliminary injunction, Denton seeks attorney's fees for Kellum's adjusted hours amounting to roughly forty hours expended researching and drafting the appellate brief (ECF No. 49-3:16–18), 16.7 hours drafting the reply brief (*id.* at 19), and 13.2 hours preparing for oral argument (*id.* at 20).

In similar cases litigated by Kellum, other courts have found such hourly sums to be excessive. For example, in *Stockstill v. City of Picayune*, the court reduced Kellum's hours for drafting the appellate brief from 55.1 hours to 25.1 hours and reduced Mangini's hours from 11.5 hours to 7.5 hours. *Stockstill*, 2017 WL 6327578, at *3. However, the *Stockstill* court's reduced hours for Kellum's preparation of the reply brief and preparation for oral argument are more in line with Kellum's adjusted hours in this case. *Id.* (reducing Kellum's hours from 38.9 to 18.9 for preparing the reply brief and reducing Kellum's hours from 19.2 to 12.2 for preparing for oral argument before the Fifth Circuit).

The *Stockstill* court mentions "Kellum's extensive First Amendment experience" as a reason for these reductions, and this Court again agrees. *Id.* Thus, the Court finds that Kellum's adjusted hours for his work researching and drafting the appellate brief are excessive and warrant reduction.

### iii. Post-Appeal

After the appeal, Denton's counsel recorded about 7.7 adjusted hours preparing for and attending mediation (ECF No. 49-3:24–27) and 16.3 adjusted hours preparing Denton's Motion for Summary Judgment (*id.* at 27). Counsel's hours for the mediation and Motion for Summary Judgment are similar to what other courts have deemed reasonable. *See, e.g.*, *Riddle v. Tex-Fin, Inc.*, No. H-08-3121, 2011 WL 1103033, at *9 (S.D. Tex. Mar. 22, 2011) (finding eight hours for mediation in a Fair Labor Standards Act case to be reasonable for attorney's fees); *Muniz*, No. 5:18-cv-01002-OLG (Order at 16), ECF No. 61:16 (applying a thirty-five percent blanket reduction to Kellum's and Mangini's requested hours, in part by reasoning that 26.9 hours devoted to the summary judgment brief and memorandum was excessive). The Court finds this category of hours claimed by Denton to be reasonable.

### iv. Correspondence and Clerical Duties

Finally, the Court notes that Denton's counsel's time entries for correspondence with Denton and opposing counsel appear to be excessive in number, and many are too vague in description to determine whether they are redundant or necessary. *See, e.g.*, (ECF No. 49-3:1–3, 5, 10, 12, 20–24) (recording about eight adjusted hours for emails and phone calls regarding "status" and "updates" and preparing memorandums regarding "conversations," without further elaboration). The Court may "reduce or eliminate hours" for which the supporting documentation is "'not illuminating as to the subject matter' or 'vague as to precisely what was done.'" *La. Power*

*& Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (quoting *Leroy v. City of Houston*, 906 F.2d 1068, 1080 (5th Cir. 1990)).  Here, the Court finds that some reduction is necessary because, with respect to the vague correspondence entries, Denton has not fully met his burden of showing them to be reasonable.  *Hensley*, 461 U.S. at 437.[5]

Additionally, Kellum and Mangini spent at least 7.1 adjusted hours conducting clerical tasks that could have been handled by staff, which are not fully recoverable as attorney's fees.  *See, e.g.*, (ECF No. 49-3:8–10, 12, 15–18, 20, 24–26) (communicating with opposing counsel, the process server, and court personnel about service of process and other matters that appear to be administrative in nature); *see Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1985) ("[F]inding that some of the hours claimed were for clerical work may justify compensating those hours at a lower rate, and, in some circumstances, might justify a reduction in the number of compensable hours . . . ."); *Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-cv-00293, 2021 WL 5155715, at *5 (S.D. Tex. July 21, 2021) (listing "obtaining court procedures" as a clerical task); *Chacon v. City of Austin*, No. A-12-CA-226-SS, 2015 WL 4138361, at *7 (W.D. Tex. July 8, 2015) (listing the filing and delivering of documents as clerical tasks); *Hung Nguyen v. Ellwood Tex. Forge Hous., LP*, No. 4:16-CV-3311, 2018 WL 1697121, at *4 n.7 (S.D. Tex. Apr. 6, 2018) (noting that clerical work includes communications with a process server).  Thus, the Court finds that a reduction for such claimed hours for clerical work is necessary.

*v. Summation of Reasonable Hours and Lodestar Calculation*

The foregoing analysis covers much, but not all, of the adjusted hours in Denton's claim for attorney's fees.  Nonetheless, it sufficiently supports the Court's recommendation that

---

[5] However, the Court also notes that the excessive number of entries regarding communications with opposing counsel is not surprising, given the City's delays at various stages of the litigation.  *See* (ECF Nos. 49-4:5–10; 50:5–7.)  The City's obstinance required Denton's attorneys to expend more time and labor than should have been necessary in this case.  The Court takes this into account in the lodestar calculation.

Denton's proposed reasonable hours for attorney's fees should be reduced by thirty (30) percent. *See Perdue*, 559 U.S. at 558; *see also Muniz*, No. 5:18-cv-01002-OLG (Order at 23–25), ECF No. 61:23–25 (reducing Kellum's and Mangini's hours by a blanket percentage and collecting cases in which courts have done the same). Thus, the Court finds Kellum's reasonable hours to be approximately 161.63 hours and Mangini's reasonable hours to be approximately 26.6 hours. Multiplying these hours by the reasonable rates of $325 for Kellum and $200 for Mangini, the Court calculates the lodestar to be $57,849.75.

### b. *Johnson* Factors

After calculating the lodestar, the Court may then consider whether the lodestar should be adjusted. *Combs*, 829 F.3d at 391–95. "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554.[6]

Here, the Court has already considered the following *Johnson* factors to calculate the lodestar, and thus will not consider them again: (1) "the time and labor required to represent the client"; (2) "the novelty and difficulty of the issues in the case"; (3) "the skill required to perform the legal services properly"; (5) "the customary fee charged for those services in the relevant community"; (9) "the experience, reputation, and ability of the attorney"; and (12) "awards in similar cases." *Saizan*, 448 F.3d at 800 n.18. Additionally, Denton does not explicitly request an upward adjustment based on the *Johnson* factors, but instead argues that the *Johnson* factors

---

[6] Such rare circumstances may include: "(1) 'where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value;' (2) 'if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted;' and (3) 'in which an attorney's performance involves exceptional delay in the payment of fees.'" *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 227 (5th Cir. 2011) (quoting *Perdue*, 559 U.S. at 554–56).

"undergird" his proposed lodestar calculation. (ECF No. 50:5.) Nonetheless, because the Court recommends a lodestar that is lower than Denton's proposed lodestar, the Court will consider whether extraordinary circumstances warrant an upward adjustment here.

For factor four ("preclusion of other employment"), Denton asserts that this case was of a "magnitude" that required counsel to "turn other potential cases away." (*Id.* at 8.) However, the Court finds no adjustment is warranted for this factor because, as other courts have held in similar cases, "[t]he record does not establish that Plaintiff's attorneys were precluded from taking on other cases due to this litigation, to any greater degree than any ordinary case." *Benham v. City of Jackson*, No. 3:19-CV-911-HTW-LGI, 2022 WL 2033333, at *12 (S.D. Miss. June 5, 2022).

For factor six ("whether the fee is fixed or contingent"), Denton explains that the fee here was contingent. (ECF No. 50:8–9.) The Court declines to consider contingency as a basis for lodestar adjustment under the traditional fee-shifting provision of 42 U.S.C. § 1988. *Perdue*, 559 U.S. at 558 (citing *City of Burlington v. Dague*, 505 U.S. 557, 565 (1992)).

For factor seven ("time limitations imposed by client and circumstances"), Denton states that this litigation had to be conducted "in a timely manner" because "Denton wanted to go back to [the] Art & Farmer's Market and share his faith as soon as possible." (ECF No. 50:9.) The Court is not convinced that such reasoning warrants a lodestar adjustment, particularly since Denton acknowledges that the Market was shut down for a period of time due to COVID-19. (*Id.*)

For factor eight ("amount in controversy and results obtained"), Denton states that he "obtained all the relief he sought in the litigation" in the form of "nominal damages, injunctive relief, and declaratory relief." (ECF No. 50:9.) "An enhancement based on the eighth factor is appropriate only when the fee applicant can demonstrate that 'it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result.'" *Walker*

14

*v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (quoting *Shipes*, 987 F.2d at 322). Denton has not met this burden here, and therefore, the Court is not convinced that an upward adjustment is warranted on this factor. And although Denton might be considered only a "partially" rather than "fully" prevailing party, the Court does not find reason to reduce the lodestar on this point, given the nature of success and Denton's own satisfaction with the outcome. *See supra* note 3; (ECF No. 50:9); *see also Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

Factor ten ("undesirability of the case") is "based upon the finding that the attorney was subjected to oppressive, unpleasant, or intimidating conditions during the representation of the client." *Riley v. City of Jackson*, 2 F. Supp. 2d 864, 874 (S.D. Miss. 1997) (citing *Cooper v. Pentecost*, 77 F.3d 829, 834 (5th Cir. 1996)). Denton's Memorandum does not indicate that his counsel experienced such conditions, but only makes the unsubstantiated claim that "[t]he case was not desirable for lawyers in the El Paso legal community. Few lawyers are comfortable with First Amendment cases, and even fewer are willing to take on such cases with no guarantee of payment." (ECF No. 50:10.) The Court finds that adjustment of the lodestar is not warranted under this factor.

As indicated in Denton's Memorandum, factor eleven ("nature and length of professional relationship with client") is not relevant in this case. (*Id.*)

In sum, the Court finds no exceptional circumstances to warrant an upward enhancement of the lodestar. Nor does the Court see any reason to reduce the lodestar. Therefore, the Court recommends awarding Denton attorney's fees in the amount of $57,849.75, the calculated lodestar.

### c. Non-Taxable Expenses

In addition to attorney's fees, Denton also seeks an award of $1,894.65 in non-taxable expenses. (*Id.* at 10–11.) Under 42 U.S.C. § 1988, a prevailing party may recover "reasonable out-of-pocket expenses . . . because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). Whether such expenses are reasonable is in the Court's discretion. *Id.*

Here, Denton claims non-taxable expenses for travel, meals, lodging, shipping, photocopying, and Westlaw research. (ECF No. 49-3:29.) The Court finds these expenses to be reasonable and necessary for litigation. *See, e.g.*, *Associated Builders*, 919 F.2d at 380; *Gros v. New Orleans City*, No. 12-2322, 2014 WL 3894371, at *5 (E.D. La. Aug. 8, 2014). However, it is not clear why Plaintiff incurred the listed Zoom expense for the "Mediation Meeting." (ECF No. 49-3:29.) This Court provided the parties with access to the mediation Zoom videoconference by email, so there should not have been a need to purchase a Zoom subscription. Thus, the Court finds all requested non-taxable expenses except for the $163.76 Zoom expense to be reasonable and recommends awarding Denton $1,730.89 in non-taxable expenses. *See* (*id.*)

### d. Taxable Costs

Denton also seeks an award of taxable expenses. (ECF No. 50:10.) Pursuant to Local Rule CV-54(a), Denton filed a Bill of Costs, indicating that he incurred $905 in Fees of the Clerk, $160 in fees for service of summons, and $153.30 in fees for transcripts. (ECF No. 51.) The Court finds such taxable costs to be reasonable and recommends that such costs be assessed in the total amount of $1,218.30. *See, e.g.*, *Harris v. Fresenius Med. Care*, No. H-04-4807, 2007 WL 1341439, at *5 (S.D. Tex. May 4, 2007) (citing 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1)).

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Attorney's Fees and Non-Taxable Expenses (ECF No. 49) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court recommends that Plaintiff be awarded:

- o  $57,849.75 in attorney's fees;
- o  $1,730.89 in non-taxable expenses; and
- o  $1,218.30 in taxable expenses.

**SIGNED** this 13th day of July, 2022.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**